**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Taunya Cox, | No. CV-18-02625-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), the Commissioner's Response (Doc. 14, "Def. Br."), Plaintiff's Reply (Doc. 15, "Reply"), and the Administrative Record (Doc. 10, "R."). For the following reasons, the Court reverses the decision and remands for further administrative proceedings.

**I.    BACKGROUND**

Plaintiff filed applications for Title II and Title XVI benefits on September 15, 2014 and February 22, 2017, respectively, alleging disability as of July 8, 2014.[1]  (R. at 45.) Following denial of the applications at the initial and reconsideration levels, Plaintiff

---

[1] Although this case is governed by 20 C.F.R. Part 404, which governs Title II claims, and 20 C.F.R. Part 416, which governs Title XVI claims, the Court will only cite to Part 404 since the applicable regulations therein are substantively identical to those in Part 416.

requested a hearing before an administrative law judge ("ALJ"), which was held on May 31, 2017. (*Id.*) Thereafter, the ALJ issued a written decision finding Plaintiff not disabled. (*Id.* at 45–57.) The Appeals Council denied review and the decision became final. (*Id.* at 1–4.) Therein, the ALJ found Plaintiff had "severe"[2] impairments of degenerative disc disease of the cervical and lumbar spines, cervical and lumbar spondylosis and radiculopathy, myofascial pain syndrome, cervicalgia, migraines, and unspecified anxiety and depressive disorder. (*Id.* at 48.) Despite these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary[3] level with the following limitations and exceptions:

- No more than 4 hours of standing;
- No more than 2 hours of walking;
- Occasional balancing, stooping, kneeling, crouching, crawling, and climbing on ramps and stairs;
- No climbing on ladders, ropes, and scaffolds;
- No overhead work;
- No exposure to dangerous machinery, unprotected heights, or vibrations;
- Occasional fine fingering with the left non-dominant hand;
- No fast-paced production environments;
- And only simple work-related decisions and relatively few changes.

(*Id.* at 50.) Based on this RFC assessment; Plaintiff's age, education, and work experience; and testimony from a vocational expert ("VE"), the ALJ found Plaintiff could perform work as an election clerk and call-out operator and was therefore not disabled. (*Id.* at 56.)

## II.   LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court reviews only issues raised by the party challenging the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

---

[2]   An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[3]   *See* 20 C.F.R. § 404.1567(a).

- 2 -

1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Finally, [the Court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Such is the case where the error is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his or her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth. *Molina*, 674 F.3d at 1110. At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled,

and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

### A. The ALJ Properly Discounted Plaintiff's Subjective Allegations.

Plaintiff's first assignment of error is that the ALJ failed to provide valid reasons for discounting her allegations regarding her pain and symptoms. (Pl. Br. at 15–19.)

Absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the

- 4 -

alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Finally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ discounted Plaintiff's statements on account that they were not consistent with: (1) objective medical evidence, (2) evidence of effectiveness of medication and treatment, and (3) reported activity levels. (R. at 50–53.)

First, in discussing the medical evidence, the ALJ noted findings from MRI studies of Plaintiff's cervical and lumbar spines and a nuclear medicine scan. (*Id.* at 52 (citing *id.* at 436–41, 444).) Additionally, she noted that Plaintiff had 5/5 strength in her upper and lower extremities (*id.* (citing *id.* at 568)) and was able to sit, stand, bend, and squat without the use of her cane (*id.* (citing *id.* at 449)).

The Court finds error. In discussing this evidence, the ALJ fails to adequately explain how it detracts from Plaintiff's allegations and fails to cite evidence that actually undermines the allegations. Specifically, while the ALJ notes some normal findings (*e.g.*, "the cervical cord signal intensity is still within the range of normal"), she also notes "postoperative changes" in Plaintiff's spine. (*Id.*) Additionally, she notes that studies showed "no evidence for canal stenosis" but also showed some "nerve root irritation" and "thickening of the right SI nerve root." (*Id.*) Not only does the ALJ's explanation of this evidence fail to convince the Court that this evidence is in conflict with Plaintiff's

testimony, but the evidence itself tends to corroborate–at least to some degree–Plaintiff's allegations, given the positive findings of postoperative changes and nerve root irritation. Accordingly, the ALJ's analysis of the medical evidence was not a clear and convincing reason for discounting Plaintiff's allegations.

Second, in discussing effectiveness of treatment, the ALJ noted that injections provided greater than 70% short-term relief of pain, significant relief for 6 months, and 100% relief on other occasions. (*Id.* at 51–52 (citing *id.* at 526, 567, 549).) Furthermore, the ALJ noted Plaintiff's report that medication, including Percocet, significantly helped her pain. (*Id.* at 52.)

The Court finds no error. Indeed, multiple reports indicate that Plaintiff had 100% relief of her pain following injection therapy. (*Id.* at 612, 614,520, 522, 531, 543, 554, 556.) Additionally, records indicate that Plaintiff had lasting relief. (*Id.* at 513 ["80% reduction of pain for another three weeks with improvement in range of motion as well as physical activity"], 526 ["Significant relief for greater than 6 months after the procedure"], 567 ["100% relief immediately following the procedure which was ongoing for more than two weeks"].) Lastly, in addition to relief from injection treatments, Plaintiff reported significant benefits from medications, namely Percocet, and denied troublesome side effects. (*Id.* at 526, 535.) Thus, the ALJ's findings are supported by substantial evidence and are clear and convincing reasons for discounting Plaintiff's allegations.

Third and lastly, the ALJ noted inconsistent statements made by Plaintiff. (*Id.* at 53.) Specifically, Plaintiff reported to a consultative examiner that it was difficult to perform activities of daily living, such as cooking and cleaning, due to her decreased mobility and left-hand weakness. (*Id.* at 53, 448.) She stated she was able to sit for up to six hours, stand for no more than two hours, walk for no more than two hours, and lift and carry no more than 10 pounds. (*Id.*) She also stated she had decreased use of her left hand and did not drive due to limited range of motion in her neck. (*Id.*) At the hearing, Plaintiff testified that she is able to help with the dishes, laundry, and preparing meals; watches television; and drives two to three times a week for five miles at one time. (*Id.* at 53, 72–

74, 84–86.) Additionally, the ALJ noted that while Plaintiff testified to using a cane daily, which was not prescribed to her, she did not have it with her at the hearing. (*Id.* at 51–52, 91, 93.)

The Court finds no reversible error here. As an initial matter, the Court does not agree that Plaintiff's reports to the consultative examiner regarding her ability to do limited household chores is inconsistent with her testimony at the hearing. Nothing Plaintiff said at the hearing undermines those reports. Indeed, she admitted she could help prepare meals, do laundry, and wash dishes, yet she also testified to having limitations with being able to do these tasks completely and frequently. (*See id.* at 84–86.) The Court, however, does agree that there is a clear inconsistency between her report to the consultative examiner that she does not drive at all and her hearing testimony where she admitted she does drive, albeit only two to three times a week for five miles at a time. (*See id.* at 448, 85.) While she testified that she has difficulty driving, stating, "I have to really rely on my mirrors," the Court finds that this is nevertheless a stark inconsistency between reporting that she does not drive at all and admitting that she drives a few times a week. (*Id.* at 85.) Moreover, Plaintiff's statement that she uses a cane daily was directly contradicted by the absence of said cane at the hearing. These inconsistencies are therefore clear and convincing reasons to discredit Plaintiff's allegations.

In sum, the ALJ properly discounted Plaintiff's subjective allegations. While not every reason the ALJ proffered was valid, some were. Thus, any error by the ALJ in relying on an invalid reason is harmless. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

**B. The ALJ Did Not Properly Reject FNP Vitiello's Opinion.**

Plaintiff's next assignment of error is that the ALJ failed to give germane reasons for rejecting the opinion of her treating family nurse practitioner, FNP Joann Vitiello. (Pl. Br. at 14–15; *see* R. at 902–06 [Vitiello opinion].)

The determination of a claimant's RFC is an administrative finding reserved to the Commissioner based on "all of the relevant medical and other evidence," including medical

opinion evidence. 20 C.F.R. §§ 404.1527(d), 404.1545(a)(3), 404.1513(a)(2). An ALJ is required to evaluate every medical opinion in the record and assign a weight to each. *Id.* § 404.1527(c). "When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In evaluating a medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675; *see* 20 C.F.R. § 404.1527(f) (stating that these factors apply to opinions from medical sources who are not "acceptable" medical sources). At the time of Plaintiff's hearing, a nurse practitioner was not an "acceptable" medical source.[4] *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Thus, in order to reject FNP Vitiello's opinion, the ALJ needed to provide "germane" reasons for doing so. *See id.* at 906.

Here, the ALJ gave "little weight" to FNP Vitiello's opinion, finding that it relied heavily on Plaintiff's subjective reports of symptoms and limitations, which the ALJ found unsupported by the "totality of the evidence." (R. at 54–55.)

The Court finds reversible error. There is no indication in FNP Vitiello's opinion that she relied on subjective reports from Plaintiff, either exclusively or in part. To the contrary, per her report, FNP Vitiello based her opinion on clinical findings and objective signs, including MRI findings and findings of muscular tenderness and decreased range of motion on examination. (*Id.* at 902.) As discussed earlier, the ALJ's analysis of the objective medical evidence, which included the MRI findings, was not a valid basis to discount Plaintiff's testimony. Thus, because the ALJ incorrectly assumed, without identifying any support from the record, that FNP Vitiello's opinion was based on subjective reports and because there is objective medical evidence that, when properly

---

[4] Under current regulations, a nurse practitioner is considered an "acceptable" medical source. 20 C.F.R. § 404.1502(a)(7).

evaluated, may actually support the opinion, reversal is warranted for reevaluation of the opinion. The Court notes, however, that there is evidence in the record which may undermine FNP Vitiello's opinion and/or its bases. (*See, e.g.*, R. at 713 ["full range of motion"], 633 ["active range of motion within normal limits"], 636, 662–63.) However, because the ALJ neither discussed nor related this evidence to FNP Vitiello's opinion, the Court cannot uphold its rejection on account of inconsistency with that evidence. *See Trevizo*, 871 F.3d. at 675 ("[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (stating that the Commissioner is responsible for resolving factual conflicts in medical evidence). Thus, because the only express reason the ALJ gave for rejecting FNP Vitiello's opinion was not valid, the Court must reverse.

**C. The ALJ Properly Found That Plaintiff Could Perform Work As A Call-Out Operator And Election Clerk.**

Plaintiff's final assignment of error is that the ALJ improperly found her capable of performing work as an election clerk and call-out operator, which she maintains is inconsistent with her limitation to work involving only "simple work-related decisions." (Pl. Br. at 12–14; *see* R. at 50, 56.)

In determining whether a claimant can perform other work in the national economy at step five, the ALJ may rely on testimony from a VE and data from the *Dictionary of Occupational Titles* ("DOT"). 20 C.F.R. §§ 404.1566(d)(1), (e). In general, the testimony provided by a VE "should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *4. In ensuring such consistency, the ALJ must ask the VE if her testimony conflicts with the DOT, and, if it is apparent that it does, the ALJ must then "obtain a reasonable explanation for the apparent conflict." *Id.* The ALJ must resolve the conflict and explain in her decision how she resolved the conflict. *Id.*

Here, in response to a hypothetical proffered by the ALJ which incorporated Plaintiff's limitation to "simple work-related decisions," the VE testified that, based on her

knowledge and observations, Plaintiff would be able to perform the occupations of call-out operator and election clerk, notwithstanding that these occupations required a Level 3 reasoning ability.[5]  (R. at 95–98.) Specifically, she testified that, based on her observation, "all it [the jobs] is is simple instructions that you should be able to follow if you can follow simple instructions that require common sense." (*Id.* at 98.)  Following the hearing, Plaintiff submitted a vocational expert report to rebut the VE's testimony and establish that she is actually incapable of performing these jobs, which she alleges the ALJ erroneously failed to review and consider. (Pl. Br. at 13; R. at 423–27.)

The Court finds no error.  Following the VE's testimony, the ALJ inquired if the testimony was consistent with the DOT, to which the VE responded in the affirmative. (R. at 97.)  Thus, the ALJ fulfilled her duty under SSR 00-4p to inquire about possible conflicts. Her other duties under SSR 00-4p were not triggered because there was no "apparent conflict" that needed to be explained by the VE or resolved by the ALJ.  Furthermore, on cross-examination by Plaintiff's attorney, the VE explained why Plaintiff was able to perform these jobs, notwithstanding that they required a Level 3 reasoning ability per the DOT. (*Id.* at 97–98.)  The VE's testimony, which was consistent with the DOT and based on her own expertise, was substantial evidence that the ALJ could rely upon in concluding that Plaintiff could perform work as a call-out operator and election clerk. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that a "VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required").  The independent report submitted by Plaintiff does not negate the status of the VE's testimony as "substantial evidence."  As such, the Court finds the step five finding supported by substantial evidence and free of legal error.

///

---

[5] Per the DOT, Level 3 Reasoning requires the abilities to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Dictionary of Occupational Titles* § 237.367-014 ("Call-Out Operator") (4th ed. 1991), *available at* 1991 WL 672186; *Dictionary of Occupational Titles* § 205.367-030 ("Election Clerk") (4th ed. 1991), *available at* 1991 WL 671719.

## IV. REMEDY

The final issue is the remedy for the ALJ's reversible error. Plaintiff requests a remand for computation and award of benefits while the Commissioner requests a remand for further administrative proceedings. (Pl. Br. at 19–21; Def. Br. at 20–21.)

The Court may remand for further administrative proceedings, as is the "ordinary remand rule," or it may remand for calculation and award of benefits under the "credit-as-true" rule. *Treichler*, 775 F.3d at 1099–1100. However, the latter is "a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). For the Court to remand for award of benefits, three conditions must be satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even where each condition is satisfied, the Court may still remand for further administrative proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, the Court finds a remand for further administrative proceedings is most appropriate. Given that Plaintiff's testimony was properly rejected and FNP Vitiello's opinion, though improperly rejected, may not be entirely supported by the totality of the evidence, the Court finds that there is serious doubt that Plaintiff is actually disabled as alleged. Moreover, because the ALJ did not engage in meaningful analysis of FNP Vitiello's opinion, further administrative proceedings would be useful to reevaluate the opinion based on its consistency with evidence actually in the record. Thus, reversal and remand for further administrative proceedings is warranted in this case to correct the errors identified by the Court and address any other issues the Commissioner finds pertinent.

///

///

**IT IS THEREFORE ORDERED**, reversing the decision of the Commissioner and remanding for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 2nd day of September, 2020.

Honorable Susan M. Brnovich
United States District Judge